WALTER R. SPOONER *vs.* INHABITANTS OF FREETOWN.

Bristol.   Oct. 29, 1884. — May 8, 1885.   C. ALLEN & COLBURN, JJ., absent.

In an action against a town for personal injuries occasioned by an alleged defect in a highway, the notice given to the town stated the defect to be "the improper grading of said road, and the want of proper railing by the side of said road." *Held*, that an instruction to the jury, that, on the question of a defect in the way, the only thing to be considered by them was whether there should have been a railing at that point, and that they could not consider the character of the declivity as a substantive defect, gave the plaintiff ground of exception.

It cannot be ruled, as matter of law, that the words "improper grading of the road," in a notice to a town of an alleged defect in a road, do not include an improper declivity of a gutter at the side of the travelled way.

In an action against a town for personal injuries occasioned by an alleged defect in a way, the plaintiff, for the purpose of showing an admission by the town that the defect existed, offered evidence tending to show that, two weeks after the accident, the road commissioner of the defendant repaired the defect. There being no evidence that the town voted to make the repairs, or that it had ratified the act of the commissioner, the judge excluded the evidence. *Held*, that the plaintiff had no ground of exception.

TORT for personal injuries occasioned to the plaintiff by an alleged defect in a highway, which highway it was admitted the defendant was bound to keep in repair. Trial in the Superior Court before *Staples*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff introduced evidence tending to show, that he was driving his horse and wagon over said highway at about seven o'clock in the evening of August 25, 1882; that his horse was gentle and trusty, and he was driving with due care; that, at a point about sixty feet east of "Dry Swamp Ditch," so called, his horse was frightened by a rabbit suddenly leaping

from a thicket and darting across the way, and the horse shied toward the south side of the road, and the wheels of his wagon toward the south side of the road went down into a gutter on that side of the road; that the road at that point was eight or nine feet wide, from shoulder to shoulder; that the wheel rut on the south side of the road was about ten inches from the shoulder of the road on that side; that the said shoulder was abrupt and precipitous, falling off to the depth of twenty-two inches into said gutter, at an angle of seventy degrees; that there was no railing at that point on the highway, and but one set of ruts; and that he was thereby thrown out of his wagon and was injured. He also testified that the road at that point was so narrow that two carriages could not safely pass abreast; that it was not safe for a carriage to go with one wheel in the gutter; that the north side was grown up with bushes quite near to the shoulder; that bushes grew up close to the shoulder on the south side, so as to conceal the steepness of the bank; that measuring from the south wheel rut, on the level of the road, out over the gutter a distance of two feet, and then measuring perpendicularly to the soil of the gutter, the distance was twenty-two inches; and that, within thirty days after the accident, he gave due notice of the time, place, and cause of the injury to the town, by delivering to one of the selectmen thereof a written notice, dated September 20, 1882, which specified the defect to be " the improper grading of said road, and the want of proper railing by the side of said road."

The plaintiff also offered evidence to show that, within two weeks after the time of receiving said notice, one of the town road commissioners, having charge of repairs of this section of the road under the statute, repaired said road at the point of the accident by filling in the gutters and widening the road four or five feet to the south; as tending to show an admission, on the part of the town, that the highway at this point was defective at the time of the accident. The judge excluded this evidence, there being no evidence of any vote of the town authorizing such repairs, or of any ratification of the acts of the commissioner.

The judge instructed the jury, that the only thing to be considered, with respect to the question of a defect in the way, was

whether there should have been a railing at the point where the accident occurred ; that, under the notice served on the town, they should consider the narrowness of the way, and the character of the declivity, not as substantive defects, but as bearing upon the question whether or not there was need of a railing at that point; to which instruction the plaintiff excepted, claiming the right to have the narrowness of the way considered as a substantive defect.

The jury returned a verdict for the defendant ; and the plaintiff alleged exceptions.

*W. C. Parker*, for the plaintiff.

*J. M. Morton & A. J. Jennings*, for the defendant.

W. ALLEN, J. The instructions were, in substance, that the only cause of injury to the plaintiff included in the notice was the want of a proper railing by the side of the road. The notice also mentioned the improper grading of the road as a defect which caused the injury. The instruction was express, that, under the notice, the jury could not consider the character of the declivity as a substantive defect. This was, in effect, a ruling that, as matter of law, the character of the declivity from the " shoulder " of the road to the bottom of the gutter was not pointed to by the words " the improper grading of said road," in the notice; and was, we think, wrong.

The constructing of the ascent from the bottom of the gutter to the travelled path was grading; and it may have been grading the road. A gutter may be part of a road-bed wrought and used for travel; it may be that part of a road-bed not prepared for travel, but wrought and used in connection with it, for receiving and carrying off water ; and it may be outside of the wrought road-bed, and proper to be separated from it by a railing. It cannot be said, as matter of law, that the words " improper grading of the road," in the notice, do not include an improper declivity of the gutter.

There is an obvious distinction between an improperly constructed gutter, and the absence of a railing, as constituting a defect in a highway. Suppose a gutter at the side of a travelled path sloping at such an angle and to such a depth as to be a source of danger to travellers. It may be that the situation and circumstances required such a gutter for the proper construction

of the road. In that case, the gutter, however dangerous, would not be a defect. Whether the road would be defective would depend upon whether it was practicable and proper to protect against the danger by a railing or otherwise. But if the proper construction of the road required only a gutter of such declivity and depth as would not endanger travellers, the gutter unnecessarily made dangerous would be itself a defect, and no question in regard to a railing might arise, for the proper construction of the road might require a safe gutter, and prohibit the obstruction of a railing.

In this case, the evidence seems to have pointed as strongly to an improperly constructed gutter as to the want of a railing against a properly constructed one, as the cause of the plaintiff's injury; but the jury were precluded from considering the former by the construction given to the notice. For this reason, the exceptions must be sustained.

We find no error in the other ruling of the court.

*Exceptions sustained.*